# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:08-CV-003-RLV-DCK

| | |
|---|---|
| ROGER MOSTELLER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's "Motion For Summary Judgment" (Document No. 7) and "Petitioner's Brief" (Document No. 8), filed June 17, 2008; and Defendant Commissioner's "Motion For Summary Judgment" (Document No. 11) and Defendant's "Memorandum In Support Of The Commissioner's Decision" (Document No. 12), filed September 17, 2008. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; Defendant's "Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff Roger Mosteller ("Plaintiff") through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. On January 29, 2004, Plaintiff filed an application for a period of disability and Social Security disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § *et seq.*, alleging that he

became disabled on December 3, 2003.  (Tr. 15, 49-51).  The Commissioner of Social Security (the "Commissioner") denied Plaintiff's application initially on May 24, 2004, and upon reconsideration on September 10, 2004.  Following a timely written request, a hearing was held on September 11, 2006.  (Tr. 209-231).  Administrative Law Judge Ronald T. Osborn  ("ALJ") issued a decision on October 17, 2006, finding that Plaintiff's was not under a disability from December 3, 2003 through the date of his decision.  (Tr. 15).  The Appeals Council gave notice on November 14, 2007 of its denial of Plaintiff's request for review, thus making the hearing decision the final decision of the Commissioner.  (Tr. 4-6); 20 C.F.R. §§ 404.955, 404.981.

Plaintiff's action seeking a reversal or remand of the ALJ's determination was filed in this Court on January 15, 2008. (Document No. 1).  The pending motions are now ripe for disposition.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971);  and (2) whether the Commissioner applied the correct legal standards. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990);  see also <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. <u>Hays</u>, 907 F.2d at 1456 (4th Cir. 1990);  see also, <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986);  <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between December 3, 2003, and the date of his decision.[1] To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. (20 C.F.R. § 404.1520(a)). The five steps are:

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) quoting 42 U.S.C. § 423(d)(1)(A).

3

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

(20 C.F.R. § 404.1520(a)(4)(I-v)). In this case, the ALJ determined at the fifth step that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore a finding of <u>not</u> disabled was appropriate. (Tr. 23). The ALJ first determined that Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date. (Tr. 17). At the second step, the ALJ found that Plaintiff had the severe impairment of left homonymous hemianopsia in both eyes. (Tr. 17). The ALJ further noted that Plaintiff "did not allege any functional limitations unrelated to his vision deficit on his disability reports" and that his wife had written that he was "mentally and physically healthy apart from his loss of peripheral vision." (Tr. 18). The ALJ concluded that the evidence showed that Plaintiff's high blood pressure, high cholesterol, and obesity did not significantly limit his ability to perform basic work activities and that those conditions were not "severe" impairments. (Tr. 18). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments

4

that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work, with the following non-exertional limitations: no driving, no jobs requiring peripheral vision, no fine visual acuity, and no concentrating for more than a few minutes at a time. (Tr. 19). In making his finding, the ALJ considered all Plaintiff's symptoms and the extent which they could be reasonably accepted as consistent with objective medical evidence and other evidence, as well as opinion testimony and Plaintiff's testimony. (Tr. 19). After considering the evidence of record, the ALJ found that Plaintiff's medically determinable vision impairment could reasonably be expected to produce the alleged symptoms, but that statements concerning the intensity, persistence and limiting effects of the symptoms was not entirely credible. (Tr. 19-20).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a carpenter or forklift operator. (Tr. 22). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 22). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included custodian in offices or residences, office equipment operator, and storage facility rental clerk. (Tr. 23). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between December 3, 2003, and the date of his decision, October 17, 2006. (Tr. 23).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ erred in failing to following the directives of Social Security Ruling ("SSR") 00-4p in his step-five

5

determination; (2) the ALJ failed to properly consider Plaintiff's inability to drive in his RFC and disability assessment; (3) the ALJ erred as a matter of law in evaluating Plaintiff's subjective complaints by failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529, and making a conclusory credibility finding in violation of SSR 96-7p; (4) the ALJ erred in failing to set forth good cause for his rejection of the opinion of Patrick Clifford; and, (5) the ALJ violated SSR 96-8p by failing to consider the combined effect of Plaintiff's impairments on his ability to work. (Document No. 8). The undersigned will discuss these contentions in turn.

### A. ALJ's Step-Five Determination

In the sequential evaluation process, once a plaintiff establishes that he is unable to return to his past relevant work, the burden of going forward shifts to the Commissioner, who must determine that there are other jobs in the national economy that Plaintiff can perform. Hall v. Harris, 658 F.2d 260, 265-65 (4th Cir. 1981). At the administrative hearing, the ALJ asked the vocational expert if there are a significant number of jobs in this region that someone of Plaintiff's age, education and past work experience could perform, assuming he is limited to light, unskilled work that does not involve driving, other duties requiring peripheral vision, fine visual acuity or concentrated visual focus for more than a few minutes at a time. (Tr. 227). In response, the vocational expert testified that there would be a "wide range of functions" for such a person, including work as a storage facility rental clerk, an operator of various office equipment (duplicators, collators or sorters), or a custodian who performs light work in office complexes or residential facilities. (Tr. 227-228). The ALJ determined, based on the vocational expert's testimony and under the framework of the Medical Vocational Guidelines, that there were significant numbers of jobs in the national economy that Plaintiff was capable of making a successful adjustment to, and therefore

he was not disabled. (Tr. 23).

In his first assignment of error, Plaintiff argues that the ALJ failed to "follow the directive of SSR 00-4p." (Document No. 8 at pp.8-9). This policy interpretation ruling provides in its purpose that before relying on Vocational Expert ("VE") or Vocational Specialist ("VS") evidence to support a disability determination or decision, "adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT)." (SSR 00-4p). It further instructs that

> [w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Id.

Plaintiff concedes that the ALJ asked the VE if there were any conflicts between his testimony and the DOT. (Document No. 8 at p.8). When questioned by the ALJ whether his VE opinions were consistent with the information in the DOT, the VE testified "Yes, Sir." (Tr. 228). In his decision, the ALJ specifically found that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 23). Nevertheless, Plaintiff now contends that the ALJ could not have complied with SSR 00-4p because the VE testimony regarding jobs available to Plaintiff did not include the DOT codes for those jobs, and without DOT codes the ALJ could not be certain that conflicts did not exist. (Document No. 8 at p.8).

The undersigned observes that Plaintiff has not alleged that SSR 00-4p, or any other relevant

7

authority, requires an ALJ to inquire as to the DOT codes for the jobs a VE references. Defendant has cited legal authority supporting its defense that the absence of DOT codes does not undermine an ALJ's step-five determination. See Irelan v. Barnhart, 82 Fed.Appx. 66, 72 (3rd Cir. 2003)("there is no legal basis for [Plaintiff's] argument that 'if the claimant is to adequately test the accuracy of the VE testimony, the DOT numbers must be available.'"); Haas v. Barnhart, 91 Fed.Appx. 942, 948 (5th Cir. 2004)(Plaintiff "cites no support for his claim that the DOT numbers for positions identified by the VE must be given.").

SSR 00-4p does require an ALJ to elicit a reasonable explanation for "an apparent unresolved conflict" between VE evidence and the DOT; however, in this instance there was no apparent unresolved conflict since the VE testified on the record that his opinions were *consistent* with the DOT. Moreover, Defendant makes the valid point that Plaintiff's counsel had the opportunity at the hearing to request the codes himself when questioning the VE, but declined to do so. (Document No. 12 at p. 5).

> [C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000). The Seventh Circuit, specifically referring to SSR 00-4p, has held that an attorney raising a discrepancy only after a hearing is too late. Donahue v. Barnhart, 279 F.3d 441, 446-47 (7th Cir. 2002). "An ALJ is not obliged to reopen the record. On the record as it stands – that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning – the ALJ is entitled to reach the conclusion [he] did." Id.

8

Plaintiff now contends there are conflicts between the VE's testimony and the DOT. (Document No. 8 at p.8). Even if Plaintiff's claim is not waived by his failure to raise the issue at the hearing, the conflicts or "possible conflicts" he alleges are not sufficient to require remand. The undersigned finds that the ALJ relied on substantial evidence in determining there were jobs in the national economy Plaintiff could perform. Plaintiff's argument that the VE's testimony is unreliable because the ALJ allegedly failed to follow the directive of SSR 00-4p is without merit.

### B. ALJ's Residual Functional Capacity Finding

Next, Plaintiff contends that the ALJ erred in his RFC finding and disability determination because he failed to properly consider that the state of North Carolina prohibits Plaintiff from driving. (Document No. 8 at p.11). At the hearing stage, the ALJ is solely responsible for deciding Plaintiff's RFC, and in making that determination the ALJ must consider the functional limitations resulting from his medically determinable impairments. SSR 96-8p. A review of the hearing decision demonstrates that the ALJ's RFC determination is supported by substantial evidence. (Tr. 19-22).

Contrary to Plaintiff's assertion, the ALJ's decision reveals that the ALJ did include consideration of Plaintiff's impaired vision and subsequent inability to drive in his assessment. The ALJ specifically found that Plaintiff had the residual functional capacity to perform light work with a few non-exertional limitations, including "no driving." (Tr. 19). The decision noted that Plaintiff's "drivers license was taken away," he is "unable to use power tools due to his poor vision," and that "all of claimant's physicians wrote that he was unable to drive." (Tr. 19-20). The ALJ decision also cited the cases submitted by Plaintiff's counsel regarding a claimant's inability to travel and found that "[t]hese cases do not help the claimant's case." (Tr. 21, 102-120). Furthermore, in

9

questioning the VE regarding possible jobs, the ALJ inquired of jobs the Plaintiff could perform "which would not involve driving or other duties requiring peripheral vision." (Tr. 225 and 227).

It appears to the undersigned that the ALJ relying on substantial evidence gave sufficient consideration to all of Plaintiff's limitations, including his inability to drive, in determining Plaintiff's RFC and in the ultimate conclusion that Plaintiff was not disabled during the relevant time period.

### C. ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ's credibility finding is not consistent with the requirements of 20 C.F.R. § 404.1529 or SSR 96-7p and that his "failure to provide some clearly specified evidence supported reasons for his rejection of [Plaintiff's] testimony warrants remand of the case." (Document No. 8 at p.13). The undersigned respectfully disagrees.

In determining whether Plaintiff's statements are credible, the ALJ must first establish that he meets the threshold requirement of suffering from medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged. SSR 96-7p. If Plaintiff is found to have met the threshold standard, then the ALJ must evaluate the intensity, persistence, and functionally limiting effect of the symptoms to determine their affect on the individual's basic work activities. Id. The ALJ is thus required "to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." Id. In determining credibility, the ALJ must consider the entire case record, including objective medical evidence, claimant's statements, statements and other information from treating physicians, psychologists, and other persons, and any other relevant evidence in the case record. Id.

The ALJ in this case properly evaluated Plaintiff's subjective complaints. The ALJ determined "[a]fter considering the evidence of record, . . that [Plaintiff's] medically determinable vision impairment could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, duration and limiting effect of these symptoms are not entirely credible." (Tr. 19-20). The ALJ went on to explain that the testimony regarding Plaintiff's inability to perform his past work as a carpenter, and that he had lost his peripheral vision, was credible. (Tr. 20). However, the ALJ found that the testimony that Plaintiff has memory problems and that his blood pressure makes him urinate every 30 minutes was not supported by any medical evidence and was inconsistent with written statements in the disability reports. Id. The ALJ observed that both Plaintiff and his wife had written that he was generally healthy except for his loss of peripheral vision. Id.

The ALJ's decision indicates that he carefully considered all of Plaintiff's symptoms and the testimony regarding those symptoms. The ALJ specifically noted that Plaintiff is able to take care of his personal needs, cook and clean, do housework and yard work, mow the grass with a riding mower, read and watch television for short periods of time, attend church, and hunt and fish if someone else drives. (Tr. 19). Consideration of Plaintiff's daily activities is proper pursuant to 20 C.F.R. § 404.1529(c)(3)(i) and SSR 96-7p, in assessing the credibility of his subjective complaints. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005).

It is the ALJ who determines the weight of evidence, makes findings of fact, and resolves evidentiary conflicts. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Such deference also extends to an ALJ's credibility determination. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984)("Because he had the opportunity to observe the demeanor and to determine the credibility

of the claimant....").  In this case, it appears that the ALJ correctly applied the relevant legal standards in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  (Tr. 20).  The undersigned does not find that the ALJ's assessment of Plaintiff's subjective complaints warrants a remand of this case.

### D. ALJ's Evaluation of Mr. Clifford's Vocational Assessment

Plaintiff also contends that the ALJ erred in failing "to give any weight to Mr. Clifford's opinion without stating any clear and evidentiary supported reasons."  (Document No. 8 at p.14).  Pursuant to SSR 06-03p, an adjudicator should consider an opinion from a non-medical source who has seen the claimant in his professional capacity.  The ruling goes on to state that the case record should reflect the consideration of the opinion from the non-medical source, and generally the adjudicator should explain the weight that was given to the non-medical source's opinion.  SSR 06-03p.  Some of the factors an adjudicator might consider in weighing the opinion evidence of "other sources" include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; and how well the source explains the opinion.  SSR 06-03p.  The ALJ here complied with the requirements of SSR 06-03p.

The ALJ specifically noted that he had "given little weight to the vocational assessment of Patrick Clifford."  (Tr. 20).   The ALJ's decision explains that while Mr. Clifford concluded that Plaintiff is incapable of functioning in a competitive labor market, he failed to apply the Social Security Administration's rules and regulations, which require a determination regarding whether there are a significant number of jobs that exist in the national economy that Plaintiff could perform.  (Tr. 20).  The ALJ also noted that Mr. Clifford's opinion jumped from the conclusions that Plaintiff

was unable to perform the visual requirements of his past job, and that most sedentary and light jobs require fine visual acuity or concentrated focus, to the assumption that Plaintiff was incapable of working. (Tr. 20).

The ALJ further found Mr. Clifford's opinion regarding the effects of Plaintiff's peripheral vision exaggerated because Plaintiff had reported and testified that he was able to perform a wide range of activities, including hunting, fishing, cleaning, cooking and using a riding lawn mower. (Tr. 20). The ALJ also noted that Mr. Clifford never met with Plaintiff prior to providing his assessment, as all contact was via telephone and fax. (Tr. 20-21).

The undersigned finds that the ALJ provided an adequate explanation for the weight given to Mr. Clifford's vocational assessment and that remand is not warranted based on this claim.

### E. **ALJ's Consideration of Plaintiff's Impairments**

Finally, Plaintiff alleges that the ALJ violated SSR 96-8p by failing to consider the combined effect of his impairments on his ability to work. (Document No. 8 at p.14). The parties agree on the applicability of 20 C.F.R. § 404.523, which provides:

> we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

20 C.F.R. § 404.523. Additionally, SSR 96-8p provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or

13

> restrictions due to other impairments--be critical to the outcome of a
> claim.

SSR 96-8p.

It appears to the undersigned that the ALJ properly considered the Plaintiff's impairments, and that Plaintiff has failed to point to any evidence demonstrating otherwise. In this case the ALJ found that Plaintiff suffered the severe impairment "left homonymous hemianopsia," but that "claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 17-18). The ALJ specifically opined that Plaintiff's high blood pressure, high cholesterol, and obesity conditions do not significantly limit his ability to perform basic work activities, and were not "severe" impairments. (Tr. 18). Weighing Plaintiff's vision impairment and other symptoms, the ALJ concluded that Plaintiff had the RFC to perform light work that didn't require, among other things, peripheral vision or fine visual acuity. (Tr. 19).

Plaintiff alleges that the ALJ failed to consider the combined impact of all of his impairments, but he does not identify any impairment(s) the ALJ failed to consider, either alone or in combination with others. (Document No. 8 at p.15). In a brief and conclusory fashion, Plaintiff states that "treating physicians repeatedly noted problems with him and his mental state," but he provides no other argument or evidence to support an allegation that there was mental impairment that the ALJ should have, but failed, to consider. Contrary to Plaintiff's suggestion, the ALJ noted in his decision that Plaintiff's wife "wrote that he is mentally and physically healthy apart from his loss of peripheral vision." (Tr. 18).

Based on the foregoing, the undersigned finds insufficient support for a claim that this case should be remanded because he ALJ failed to give proper consideration to all of Plaintiff's impairments.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 390 (1971). As such, the undersigned will recommend that the Commissioner's decision should be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (Document No. 7) be **DENIED**; Defendant's "Motion For Summary Judgment (Document No. 11), be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond

v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Richard L. Voorhees.

**IT IS SO RECOMMENDED**.

Signed: July 26, 2010

David C. Keesler
United States Magistrate Judge